**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re Gorilla Companies LLC, et al.,<br><br>Debtors.<br><br>Robb M. Corwin; Jillian C. Corwin; and 13 Holdings, LLC,<br><br>Appellants,<br><br>vs.<br><br>Gorilla Companies LLC,<br><br>Appellee. | No. CV-10-01029-PHX-DGC<br><br>No. AP-09-00266-RJH<br>No. BK-09-02898-RJH<br>No. BK-09-02901-CGC<br>No. BK-09-02903-GBN<br>No. BK-09-02905-CGC |

Robb and Jillian Corwin and 13 Holdings, LLC appeal from the final judgment entered by the bankruptcy court on March 22, 2010. The Court has jurisdiction under 28 U.S.C. 158(a)(1). The judgment will be affirmed in part and reversed in part.[1]

**I.    Background.**

13 Holdings is owned by Robb and Jillian Corwin. In June 2007, pursuant to an Asset Purchase Agreement ("APA"), 13 Holdings sold the assets of several event

---

[1] The parties' requests for oral argument are denied. Rule 8012 of the Federal Rules of Bankruptcy Procedure permits the Court to forego oral argument if, as here, "the facts and legal arguments are adequately presented" and "the decisional process would not be significantly aided by oral argument." *See In re Branford Partners, LLC*, 2010 WL 3521907, at *1 (C.D. Cal. Sept. 6, 2010) (finding the appeal appropriate for decision without oral argument pursuant to Fed. R. Civ. P. 78 and Fed. R. Bank. P. 8012).

management companies to Gorilla Companies LLC in exchange for an immediate $14 million payment, Gorilla stock worth $1 million, a $1.5 million deferred note, and a "seller note" that could pay an earnout of up to $6 million depending on the company's performance from March 2007 through February 2008.  *See* Appellants' Excerpt of Record Exhibit ("ER") 10.

Robb Corwin served as CEO of Gorilla after the asset purchase until his termination in mid-November 2008.  On April 2, 2008, Gorilla paid the $1.5 million deferred note and made a $1.4 million prepayment on the seller note.  A dispute arose later that year regarding the amount 13 Holdings should receive under the seller note.

Gorilla filed suit against the Corwins and 13 Holdings in state court.  *See Gorilla Cos. LLC v. Corwin*, No. CV2008-032847 (Ariz. Super. Ct. Dec. 23, 2008).  The case was removed to the bankruptcy court after Gorilla filed chapter 11 bankruptcy.  *Gorilla Cos. LLC v. Corwin*, No. AP-09-00266-RJH (Bankr. Ariz. Mar. 10, 2009).  Robb Corwin and 13 Holdings subsequently filed proofs of claim in the bankruptcy proceedings.  Those claims were heard on July 16 and 21, 2009.  ER 13-14; Appellee's Supplemental Excerpt of Record Exhibits ("SER") 207-08.  A bench trial on the claims asserted by Gorilla in its amended complaint (ER 64) was held on November 23 and 30, 2009 (ER 1-2).  On March 22, 2010, the bankruptcy court entered final judgment in favor of Gorilla on the claims against it and on its own claims for breach of contract, breach of the covenant of good faith and fair dealing, negligent misrepresentation, fraud, and unjust enrichment.  ER 112; Doc. 1 at 17-21. Gorilla was awarded more than $4.7 million in damages (including prejudgment interest) and nearly $1.8 million in attorneys' fees.  *Id.*  This appeal followed.  Doc. 1 at 12-16.[2]

**II.   Standard of Review.**

The bankruptcy court's "findings of fact are reviewed under the clearly erroneous

---

[2] Citations to items in the Court's docket will be to page numbers supplied by the electronic docketing system at the top of each page, rather than to original page numbers on the bottom of each page.

- 2 -

standard, and conclusions of law, de novo." *In re Lazar*, 83 F.3d 306, 308 (9th Cir. 1996). The bankruptcy court's award of attorneys' fees and costs "should not be reversed absent an abuse of discretion or an erroneous application of the law." *Id.*

## III. Discussion.

Appellants argue that Gorilla failed to show it reasonably relied on an actionable misrepresentation, that it failed to disclose and establish lost profits, that no contractual provision allows for repayment of the $1.4 million earnout payment made in April 2008, that the bankruptcy court erred in several respects in calculating amounts owed under the seller note, and that it erred in awarding fees related to the administrative bankruptcy and for Gorilla's tort claims. Doc. 52. The Court will address each argument in turn.

### A. Fraud and Negligent Misrepresentation.

Gorilla's fraud and negligent misrepresentation claims are founded on estimated EBITDA calculations Robb Corwin provided on February 22, 2008 (the "Corwin calculations"), which suggested that he had earned the full $6 million under the seller note. ER 14. Gorilla claims that those calculations were false and caused it to make the $1.4 million prepayment on the seller note on April 2, 2008.[3]

An essential element of claims for fraud and negligent misrepresentation is actual, justifiable reliance on the alleged misrepresentation. *Kuehn v. Stanley*, 91 P.3d 346, 350 (Ariz. Ct. App. 2004); *Walters v. First Fed. Sav. & Loan Ass'n of Phoenix*, 641 P.2d 235, 240 (Ariz. 1982). The only evidence the bankruptcy court cited in finding reliance on the part of Gorilla is the prepayment itself. ER 2 at 597. But the bankruptcy court does not explain what evidence shows this payment was made *in reliance* on the Corwin calculations. As to whether any reliance on the part of Gorilla was justified, the bankruptcy court stated only: "[Gorilla] was entitled to rely, did rely. The reliance was reasonable and so forth." *Id.* at 542. Appellants argue, correctly, that the bankruptcy

---

[3] EBITDA stands for earnings before interest, taxes, depreciation and amortization. ER 10 § 1.2.

- 3 -

court clearly erred in finding that Gorilla reasonably relied on the Corwin calculations.

When he emailed his calculations to Gorilla, Corwin made clear that they were "estimated" calculations.  ER 14.  The accuracy of the numbers was immediately questioned by Gorilla.  ER 15.  Managing Director Gunnar Bjorklund believed that the company would have to "scrutinize" the Corwin calculations.  ER 47. Gorilla associate Gregg Osenkowski believed that "without monthly detail" there was "absolutely no way" to reconcile his own projections for the earnout with the Corwin calculations.  *Id.*  He specifically noted that certain numbers "look suspect."  ER 46.  He concluded that Gorilla needed to "dig in" to the monthly details, and went so far as to recommend that the company hire a temporary CFO to review the books for the earnout calculation. ER 46.  Only one week later, and before having determined whether the projected earnout amount was even "in the ballpark," Bjorklund agreed in principle to make a prepayment on seller note.  ER 32.  One week before actually making the $1.4 million prepayment on April 2, 2008, Gorilla was still working on the "confirmations of the EBITDA calculations" provided by Corwin.  ER 55.  That task remained a work in progress as late as September 2008, and Gorilla's "final determination" on the earnout calculation was to be turned over to Gorilla's accountant for "review and finalization."  ER 15.

Gorilla largely fails to address this issue in its response brief.  Doc. 70 at 10-12. Gorilla does claim that Corwin never sought to clarify and correct his calculations, but instead continued to assert that the numbers were accurate and showed he was entitled to the full $6 million earnout under the seller note.  *Id.* at 11.  But whatever Corwin's intentions were, Gorilla cites no evidence showing that it actually and justifiably relied on representations by Corwin.  *Id.* at 10-12.  Any such justifiable reliance is belied by the evidence recounted above.[4]

---

[4] This is true for the negligent misrepresentation claim, and even more true for the fraud claim.  All elements of fraud, including justifiable reliance, must be established by clear and convincing evidence.  *Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033-34 (Ariz. Ct. App. 2010).  "'Fraud may never be established by doubtful, vague, speculative, or inconclusive evidence.'"  *Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (Ariz.

- 4 -

Because justifiable reliance is an essential element of both fraud and negligent misrepresentation, *Kuehn*, 91 P.3d at 350, *Walters*, 641 P.2d at 240, Gorilla's failure to present evidence of such reliance requires reversal of the bankruptcy court's judgment on both theories.[5]

**B.     Lost Profits.**

The bankruptcy court awarded Gorilla $1 million in lost profits based on Corwin's alleged fraud and self-help efforts in connection with the removal of more than $260,000 from Gorilla Quick Cash ATM machines.  Because the finding of fraud will be reversed, the award of lost profits must be set aside to the extent it is based on Gorilla's fraud claim.

Appellants argue that Gorilla never disclosed its lost profit damages calculation prior to trial.  Doc. 52 at 20.  Gorilla responds by asserting that it disclosed its intent to seek "compensatory and consequential damages in an amount to be proven at trial," but does not assert that it ever disclosed a computation of its lost profit damages before trial.  Doc. 70 at 12-13.  Gorilla's disclosures on this issue clearly were inadequate.  Rule 26 of the Federal Rules of Procedure – which applies in bankruptcy court trials of adversary proceedings, *see* Fed. R. Bank. P. 7026 – requires that parties disclose, before trial, "*a computation of each category of damages* claimed by the disclosing party[.]"  Fed. R. Civ. P. 26(a)(1)(A)(iii) (emphasis added).  These disclosures are not optional.  Rule 26(a)(1) states that the party "must" make them "without awaiting a discovery request."  *Id.*  The Advisory Committee Note to Rule 26 describes this disclosure obligation as "the functional equivalent of court-ordered interrogatories."  Fed. R. Civ. P. 26(a)(1), Adv. Comm. Note (1993).  Rule 37 adds teeth to this disclosure obligation by stating, in unequivocal terms, that a party who fails to disclose the required information "is not

---

1982) (citation omitted).

[5] Because the Court reverses on Appellant's justifiable reliance argument, it need not address the argument that Corwin's EBITDA calculation was only an estimate that would not give rise to a claim for fraud or negligent misrepresentation.

- 5 -

allowed to use that information . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see* Fed. R. Bank. P. 7037.

Gorilla does not argue that its failure to disclose was substantially justified. Nor can it be said that the nondisclosure was harmless. Disclosing a computation of damages under Rule 26(a)(1) is necessary for the opposing party to produce responding evidence, such as an expert opinion. Corwin never had an opportunity to prepare and present evidence in opposition to Gorilla's lost profits computation because that computation was not disclosed as the rules require. And because the disclosure obligation is automatic – the functional equivalent of court-order interrogatories – Gorilla's actions cannot be justified because Corwin failed to request the computation before trial or failed to move in limine to preclude Gorilla from presenting evidence that Rule 37(c) already precluded. The Court concludes that it was an abuse of discretion to permit Gorilla to present evidence of damages that had never been disclosed as required by Rule 26(a)(1). *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008) (affirming exclusion of damages evidence at trial because "[d]isclosure of damage calculations was mandated under Rule 26(a)"); Fed. R. Civ. P. 37(c)(1).

Gorilla argues that Appellants did not object to Kramer's testimony or otherwise cross-examine him about lost profits. Doc. 70 at 15. But Kramer testified during the first day of trial (ER 1 at 25-26), and it was not until the second day – after Appellants had moved for a directed verdict – that counsel for Gorilla asserted that its damages included lost profits (ER 2 at 472). Appellants promptly objected to that category of damages on the ground that "[i]t was not disclosed to [them] at any point during this case, as required under Rule 26(a)(1)(A)(iii)." ER 2 at 475. Appellants have not waived their objections to the award of lost profit damages.

Moreover, Gorilla failed to meet its burden of establishing the amount of lost profits. A plaintiff must "prove the amount of [its] damages 'with reasonable certainty.'" *Walter v. Simmons*, 818 P.2d 214, 221 (Ariz. Ct. App. 1991) (quoting *Gilmore v. Cohen*,

- 6 -

386 P.2d 81, 82 (1963)).  This "reasonable certainty" requirement applies with added force where, as here, a loss of future profits is alleged.  *Gilmore*, 386 P.2d at 36.

Gorilla CEO Brad Kramer testified that the company's revenue for 2009 dropped by more than $10 million, that about half of this amount was due to the poor economy, and that because the company's gross profit percentage is close to 25%, the estimate of lost profits attributable to the actions of Corwin is "[p]robably at a profit level of about a million dollars."  ER 1 at 25-26.  But Kramer presented no financial or other records to support this estimate, nor did he claim that such evidence is unavailable.  "[T]he plaintiff in every case should supply some reasonable basis for computing the amount of damage and must do so with such precision as, from the nature of his claim and the available evidence, is possible."  *Gilmore*, 386 P.2d at 36.  Kramer's uncorroborated testimony is too general and conclusory to establish the amount of lost profit damages with reasonable certainty.

In summary, the bankruptcy court's judgment must be reversed with respect to the award of $1 million in lost profits.

### C. Breach of Contract and Breach of the Implied Covenant.

To prevail on a claim for breach of contract, the plaintiff must prove the existence of a contract between the plaintiff and defendant, a breach of the contract by the defendant, and resulting damage to the plaintiff.  *See Coleman v. Watts*, 87 F. Supp. 2d 944, 955 (D. Ariz. 1998) (citing *Clark v. Compania Ganadera de Cananea, S.A.*, 387 P.2d 235, 237 (Ariz. 1963)).  Gorilla's breach of contract claim is based on Corwin's alleged misrepresentations leading to the $1.4 million prepayment on the seller note, alleged breaches of a non-competition agreement, a wrongful notice of default on the seller note issued in January 2009, and alleged misstatements concerning the net income of 13 Holdings at the time of the asset purchase.  ER 64 at 2021-26.  The bankruptcy court entered judgment in favor of Gorilla on the breach of contract claim as it related to the seller note.  Doc. 1 at 19-20; ER 112 at 3479-80.

Appellants argue that judgment on the breach of contract claim must be reversed because, among other things, neither 13 Holdings nor the Corwins promised, contractually or otherwise, that the $1.4 million prepayment on the seller note was refundable. Docs. 52 at 22, 74 at 15. The Court agrees.

The bankruptcy court concluded that the $1.4 million prepayment should be repaid under alternative legal theories: fraud, breach of contract, and unjust enrichment. ER 2 at 541, 599; ER 112 at 3480-41. The right to a refund is implicit, the bankruptcy court found, when a prepayment is made and it turns out that no payment was actually due. ER 2 at 471, 541. But no contractual provision is cited in support of this repayment theory. The Court agrees with the bankruptcy court that where the contract itself does not explicitly require repayment of monies not due, the doctrine of unjust enrichment applies. ER 2 at 541.

The judgment on the breach of contract claim, but not on the claim for unjust enrichment, will be reversed. In addition, the bankruptcy court provided no basis for entering judgment on the claim for breach of the implied covenant other than the reasons supporting judgment on the fraud and breach of contract claims. Because judgment on those claims will be reversed, the judgment on the breach of the implied covenant claim must also be reversed. To be clear, while judgment on the claims for breach of contract and breach of the implied covenant will be reversed, the alternative judgment on the claim for unjust enrichment (Doc. 1 at 20; ER 112 at 3480) stands. As found correctly by the bankruptcy court, Gorilla is entitled to repayment on an unjust enrichment theory where an overpayment has been made and the contract itself does not require the repayment. ER 2 at 541.

The bankruptcy court erred in allowing continual refinement of the EBITDA calculation, Appellants contend, because the $1.4 million prepayment on the seller not was not contingent on a final EBITDA calculation, and the prepayment became final at the latest on April 28, 2008. Docs. 52 at 22, 74 at 14. The seller note provides that

Gorilla will furnish 13 Holdings "its calculation of the principle amount of this Seller Note within 60 days following the Target Period," which ended on February 29, 2008. ER 10 at 1021. The Court agrees with the bankruptcy court that the seller note does not require that "EBITDA should only be for amounts calculated as of April 30, [2008], whether or not . . . a final calculation was presented by that date." ER 2 at 595. Continual refinement of the EBITDA calculation, therefore, was not improper, particularly under the doctrine of unjust enrichment.

The Court also finds that the bankruptcy court did not clearly err in finding that the $1.4 million payment Gorilla made to 13 Holdings on April 2, 2008, constituted, at least in part, a prepayment under the seller note. While retaining Corwin as CEO may have been the reason the payment was made earlier than required under the seller note, the payment clearly was meant to satisfy part of the earnout amount due under the seller note.

### D.     The EBITDA Calculation.

Appellants argue that the bankruptcy court made four errors in calculating EBITDA: double counting a depreciation expense, reclassifying independent contractors to employees, making adjustments inconsistent with judicial admissions made by Gorilla, and writing-off an unpaid NFL invoice after the deadline for calculating EBITDA. Doc. 52 at 23. When these alleged errors are corrected, Appellants assert, EBITDA increases from $3,970,803 to $4,779,372, resulting in Gorilla owing 13 Holdings over $636,000. *Id.* The Court will address each alleged error in turn.

#### 1.     The Depreciation Expense.

There is no dispute that Gorilla's expert, Lynton Kotzin, erroneously deducted a $297,328 depreciation expense twice from EBITDA. Mr. Kotzin explained at trial that this error was offset by another error he had made, and that the double-counting error ultimately was immaterial because his overall EBITDA computation reconciled to within $10,000 of the starting EBITDA computation of Appellants' expert witness, Stephen

Clarke. ER 1 at 167-73. Appellants contend that by not accounting for Mr. Kotzin's double-counting of the depreciation expense, the bankruptcy court clearly erred in deducting $297,328 from EBITDA. Doc. 52 at 24.

But Appellants do not explain why the depreciation expense error is material to the EBITDA calculation. The bankruptcy court noted that while Mr. Clarke repeatedly stated that Kotzin had erred in deducting the depreciation expense twice from EBITDA, "he never explained what difference it made." ER 2 at 540. The bankruptcy court found Mr. Clark not credible, particularly compared to Mr. Kotzin. *Id.* at 598. Given that credibility determination, and the failure on the part of Mr. Clarke and Appellants to explain why the depreciation expense error is material, the Court cannot say that the bankruptcy court clearly erred.

### 2. Reclassification of Independent Contractors.

Section 1.2 of the APA allows for a deduction from EBITDA for the costs associated with the reclassification of independent contractors to employees, but only for the "period prior to closing.[.]" ER 10 at 982, § 1.2(a)(1)(vi). Appellants argue that the bankruptcy court erred in allowing a reclassification deduction from EBITDA in the total amount of $261,415, which consists of $57,986 for the pre-closing period and $203,429 for the post-closing period. The Court agrees with Appellants with respect to the post-closing period.

The plain language of the APA limits the deduction for reclassifying employees to the pre-closing period. Contrary to the finding by the bankruptcy court (ER 2 at 595), the general language in Section 1.2 defining the meaning of EBITDA "with respect to any particular period" (ER 2 at 981), does not trump the specific language in Section 1.2(a)(1)(vi) that costs associated with the reclassification of independent contractors to employees may be deducted from EBITDA only for the "period prior to closing[.]" ER 10 at 982. The final EBITDA computation should be adjusted to include the amount deducted for post-closing reclassification costs, that is, $203,429.

The bankruptcy court did not err in finding that no audit was required in order to make the adjustment to EBITDA for reclassification costs. ER 2 at 595. The relevant provision, Section 4.7 of the APA, requires an audit "[u]nless otherwise determined by [Gorilla's] Board of Managers." ER 10 at 999. Appellants do not dispute that no audit was performed because, on advice of counsel, the Board decided only two days after the closing date to reclassify all independent contractors to employees. *See* Doc. 70 at 22-23. The lack of an audit, therefore, does not require that the $57,986 in reclassification costs for the pre-closing period be added back to the bankruptcy court's EBITDA calculation.

### 3.     Judicial Admissions.

Contrary to Appellants' assertion, the bankruptcy court did not err in finding "no basis for an argument that any [EBITDA] calculations presented prior to [the] trial are judicial admissions by Gorilla." ER 2 at 593. It is not clear from the record that Gorilla was playing "fast and loose with the facts" (*id.* at 594), and calculations made in the context of seeking preliminary relief do not warrant application of the judicial admission doctrine.

### 4.     The NFL Invoice.

Gorilla breached a contract with the NFL requiring it to provide security personnel for Super Bowl XLII played in Glendale, Arizona in February 2008. When Gorilla failed to provide sufficient personnel, the NFL hired replacement personnel at a cost of approximately $177,000 and deducted this amount from the total amount owed to Gorilla under the parties' contract. Gorilla ultimately determined that it was not in the company's best interest to pursue the portion of the invoice not paid by the NFL, in part because the NFL had a strong case for hiring replacement personnel, the NFL was an important client, and the costs associated with arbitrating a questionable claim were not insubstantial. The bankruptcy court did not err in concluding that this determination was "a management decision, a business judgment and not something for an accountant to decide[.]" ER 2 at 538. The decision to exclude the $177,000 invoice amount from the

EBITDA calculation was proper.

### 5. EBITDA Calculation Summary.

With respect to the EBITDA calculation, the bankruptcy court's judgment is affirmed with respect to the $297,328 depreciation expense, the $177,000 NFL invoice, and the $57,986 for employee reclassification for the pre-closing period. The bankruptcy court erred in deducting from EBITDA $203,429 for employee reclassification for the post-closing period. The final judgment will be reversed in this respect and the case remanded for a new EBITDA calculation consistent with this order. It is not clear to the Court what the correct final EBITDA calculation should be in light of the adjustments to EBITDA required by this order. Nor is it clear, given affirmance of the unjust enrichment claim, how this order affects the portion of the judgment awarding $1,412,212 as overpayment on the seller note and requiring return the $268,840 in Gorilla Quick Cash funds. Doc. 1 at 20; ER 112 at 3480. The bankruptcy court, on remand, shall determine a new final EBITDA calculation in light of the rulings set forth in this order and shall amend the judgment accordingly.

### E. The Award of Attorneys' Fees.

The bankruptcy court awarded Gorilla attorneys' fees in the total amount of $1,742,034.15. ER 109. This amount included Gorilla's administrative bankruptcy fees. Those fees should be awarded to Gorilla, the bankruptcy court reasoned, because Gorilla prevailed on its breach of contract claim and the administrative bankruptcy fees were "related to" the APA. *Id.* at 3460. The bankruptcy court also noted that Gorilla's bankruptcy was effectively brought against Corwin and was triggered by, and substantially intertwined with, the contract dispute.

As explained more fully above, the Court finds that the bankruptcy court erred in finding in favor of Gorilla on the breach of contract claim. In light of this ruling, the Court finds that the award of attorneys' fees must be vacated. On remand, the bankruptcy court may determine whether fees should be awarded to either side.

**IT IS ORDERED:**

1. The judgment entered by the bankruptcy court on March 22, 2010 (Doc. 1 at 17-21; ER 112) is **affirmed in part** and **reversed in part**. The judgment is reversed with respect to (1) Gorilla's claims for fraud, negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing, (2) the awards of $1 million in lost profits and $1,742,034.15 in attorneys' fees, costs, and related non-taxable expenses (plus applicable interest), and (3) the $203,429 deduction from the EBITDA calculation for employee reclassification for the post-closing period. The judgment is affirmed on Gorilla's claim for unjust enrichment and, with respect to the EBITDA calculation, the $297,328 depreciation expense, the $177,000 NFL invoice, and the $57,986 for employee reclassification for the pre-closing period.

2. The case is remanded to the bankruptcy court for further proceedings consistent with this order.

Dated this 11th day of March, 2011.

David G. Campbell
United States District Judge